# EXHIBIT A

Jahan C. Sagafi (State Bar No. 224887)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
Email: jsagafi@outtengolden.com

Adam T. Klein*
Michael Litrownik*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
Email: atk@outtengolden.com
Email: mlitrownik@outtengolden.com

Pooja Shethji*
OUTTEN & GOLDEN LLP
601 Massachusetts Ave. NW
Suite 200W
Washington, DC 20001
Telephone: (202) 847-4400
Facsimile: (646) 952-9114
Email: pshethji@outtengolden.com

* pro hac vice

Peter Romer-Friedman*
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312,
Washington, DC 20036
Telephone: (202) 888-1741
Email: peter@guptawessler.com

Jason R. Flanders (State Bar No. 238007)
AQUA TERRA AERIS LAW GROUP
490 43rd Street
Oakland, CA 94609
Telephone: (916) 202-3018
Email: jrf@atalawgroup.com

Matthew K. Handley*
Rachel Nadas*
HANDLEY FARAH & ANDERSON PLLC
777 6th Street, NW
Eleventh Floor
Washington, DC 20001
Telephone: (202) 559-2411
Email: mhandley@hfajustice.com
Email: rnadas@hfajustice.com

William Most (State Bar No. 279100)
LAW OFFICE OF WILLIAM MOST
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
Telephone: (504) 509-5023
Email: williammost@gmail.com

*Attorneys for Plaintiff and Proposed Class Members*
*in Opiotennione v. Facebook, Inc.*, No. 19-cv-07185 (N.D. Cal.).

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

ROSEMARY VARGAS et al.,

              Plaintiffs,

    v.

FACEBOOK, INC.,

              Defendant.

Case No. 3:19-cv-05801-WHO

**PLAINTIFF'S OPIOTENNIONE'S OPPOSITION TO DEFENDANT FACEBOOK INC.'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED**

1    Plaintiff respectfully requests that the Court deny Facebook's administrative motion to relate

2    *Vargas v. Facebook, Inc.*, No. 19-cv-05081 (N.D. Cal.), and *Opiotennione v. Facebook, Inc.*, No. 19-cv-

3    07185 (N.D. Cal.). First, Facebook's motion is untimely, filed eight months late with no justification for

4    the delay and just weeks before the August 6, 2020 hearing on the motion to dismiss in *Opiotennione*.

5    Second, Local Civil Rule 3-12's factors are not met, as the cases involve totally different parties, classes,

6    legal claims, and relief. Cases often address similar practices or the same legal defense without meriting

7    reassignment to a single judge (*e.g.*, overtime suits or excessive police force). This case is no different.

8    ### FACTUAL AND PROCEDURAL BACKGROUND

9    On August 16, 2019, *Vargas* was filed, challenging Facebook's violations of various housing

10   practices barred by the federal Fair Housing Act (FHA) on behalf of people who looked for housing on

11   Facebook and are members of the protected classes of race, national origin, disability, familial status,

12   and sex. ECF No. 1. On October 31, 2019, Opiotennione filed California public accommodations claims

13   challenging the denial of financial services information to Facebook users based on sex and age and

14   seeking to represent only women and older Facebook users denied financial services ads by Facebook.

15   ECF No. 1. In November and December 2019, Opiotennione and Facebook *both* consented to proceed

16   before Magistrate Judge Corley. ECF Nos. 6, 21. On February 19, 2020, Facebook moved to dismiss

17   *Opiotennione* based on a stipulated schedule. ECF No. 26. Opiotennione then told Facebook she would

18   amend, as the schedule allowed. ECF No. 24. On February 29, 2020, four months into the *Opiotennione*

19   case, Facebook filed a related case motion in *Vargas*. ECF No. 33. But Facebook then withdrew its

20   motion to determine if the *Opiotennione* amendment provided grounds for such a motion. ECF No. 34.

21   On March 31, 2020, Opiotennione amended, adding D.C. public accommodations and consumer

22   claims as alternatives to California claims. ECF No. 30. On May 8, Facebook moved to dismiss. ECF

23   No. 35. After two extensions of Facebook's reply brief deadline, which moved the dismissal hearing to

24   August 6, ECF Nos. 38, 44, & 49, the hearing is now *only two weeks away* and 101 pages of briefs have

25   been filed. On July 13, *Vargas* was amended, adding a New York fair housing claim and subclass and

26   clarifying that the national class is a Rule 23(b)(2) injunctive relief class. ECF No. 49 ¶¶ 38, 115-126.

27   On July 17, Facebook filed this motion, ECF No. 50, over eight months after *Opiotennione* was filed.

28   ### ARGUMENT

I.    **Facebook's Motion Should Be Denied Because It Is Over Eight Months Late**

This motion violates the rule that a party "must promptly file" a related case motion. L.R. 3-12(b). Courts routinely deny such motions when there is no persuasive reason for delay. *E.g.*, *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, No. 06-cv-02064, 2009 WL 3458704, at *1 (N.D. Cal. Oct. 23, 2009) (denying motion due to "unjustified lapse of nearly a year before [movant] sought to relate cases"); *cf. Dave Drilling Envt'l. Eng'g, Inc. v. Gamblin*, No. 14-cv-02851, 2015 WL 4051968, at *7 (N.D. Cal. July 2, 2015) (Orrick, J.) (finding "misconduct" when a party failed to promptly file). Failing to promptly file "evinces both a failure to follow the court's local rules, as well as an attempt at judge shopping, a practice that abuses the integrity of the judicial system," *Robles v. In the Name of Humanity*, No. 17-cv-04864, 2018 WL 2329728, at *5 (N.D. Cal. May 23, 2018) (citation and quotations omitted).

Facebook offers no legitimate reason for delaying over eight months from the filing of the complaint and over three months after the amended complaint in *Opiotennione*. Facebook's counsel's medical leave until December 2019 is no excuse. It did not stop Facebook from consenting to Judge Corley on December 26, 2019 and *knowingly* deciding *not* to file a related case motion. ECF No. 21. Nor does Facebook offer any authority that its hope to settle *Vargas* justifies ignoring the local rule. If that were true, Facebook should have filed its related case motion after the April 24 mediation in *Vargas* failed, *see* ECF No. 36 at 2, not three months later. Nor does *Vargas's* amendment last week justify the delay, since that amended complaint challenges the *same practices* as the original complaint and added a New York claim and subclass that only further differentiate it from *Opiotennione*. *Vargas*, ECF No. 48.

Whatever Facebook's motivations might be for filing such an untimely motion—changing its mind on which judge it prefers, not wanting its motion to dismiss to be heard in *Opiotennione* before *Vargas*, or mere delay—none excuse this delay. Facebook is a sophisticated party with the *same counsel* in both of these cases. It should follow the most basic rules. This is especially true as Facebook requires all its users to bring legal actions against Facebook *in this district*. *See Opiotennione*, ECF No. 30 ¶ 13. The motion is not just timely. As explained below, it will cause prejudice and waste judicial resources.

II.    **The Related Case Standard Is Not Satisfied**

Under the standard in L. R. 3-12(a), the two cases are not related. The only thing that they have in common is they challenge *some* form of bias in Facebook's ad platform tools, and Facebook asserts—

in contravention of controlling law—§ 230(c) immunity for *all actions* it and its advertisers take. But all other aspects—the parties, the scope and type of classes, the legal claims, and the challenged practices—are different. Thus, there will be no duplicated labor or risk of conflicting results. It is far from a situation where cases have the "same putative class" and same claims challenging identical practices. *McGee v. Ross Stores, Inc.*, No. 06-cv-7496, 2007 WL 2900507, at *1 (N.D. Cal. Oct. 1, 2007); *see In re Facebook Privacy Litig.*, No. 10-cv-02389, 2010 WL 5387616, at *1 (N.D. Cal. Dec. 21, 2010).

### A.  <u>The Parties and Classes Are Not Substantially Similar and They Seek Different Relief</u>

The parties are by no means "substantially the same." L. R. 3-12(a)(1). The plaintiffs and class definitions—compare *Vargas*, individuals who sought *housing* and were discriminated against based on race, national origin, disability, familial status, and sex, to *Opiotennione*, individuals excluded from receiving ads for *financial services* based on *only* age or sex—do not overlap at all. *See Vargas*, FAC (ECF No. 48) ¶ 38; *Opiotennione*, FAC (ECF No. 30) ¶ 124. *Vargas* asks to represent a national class with federal FHA claims and a New York subclass with New York claims, FAC ¶ 39, while *Opiotennione* seeks to represent a national class of people with California public accommodations claims (or a D.C. class with D.C. claims). FAC ¶ 126. *Vargas* seeks to certify a national class under Rule 23(b)(2) for injunctive relief; *Opiotennione* seeks to certify a Rule 23(b)(3) damages class. Even a "limited overlap of some class members" who have the same legal claims 'is not enough to reach the 'substantial similarity' threshold." *Ortiz v. CVS Caremark Corp.*, No. 12-cv-05859, 2013 WL 12175002, at *2 (N.D. Cal. Oct. 15, 2013). Here, there is no overlap in the classes or between their claims *at all*.

### B.  <u>The Legal Claims in Both Cases Have Little in Common Legally and Factually</u>

Facebook strains to identify common factual or legal issues. Those issues—a § 230(c) immunity defense over Facebook's most common ad platform tools (*e.g.*, audience selection and ad delivery) and enforcing its choice of law clause—will likely arise in *any* case involving that ad platform. As there are 1.66 billion people engaging with that platform each day and it earns Facebook 98.5% of its revenue, *Opiotennione*, FAC ¶¶ 16, 19, assignment of all claims relating to Facebook's ad platform and a CDA defense to one judge will not serve judicial economy and might even create an appearance of partiality. For those reasons, all cases involving qualified immunity and § 1983 claims against the same police department or wage and hour suits against an employer are not typically assigned to one judge. *See*

*Ortiz*, 2013 WL 12175002, at \*2. Mere "overlap in issues . . . is not the test for relating cases; indeed, implicit in *Civil Local Rule 3-12(a)* is the principle that single judges of this Court do not become responsible for all cases arising in one area of law, even when some of the same parties are involved," *Allen v. City of Oakland*, No. 00-cv-4599, 2011 U.S. Dist. LEXIS 135556 (N.D. Cal. Nov. 23, 2011) ("it is not this Court's province to relate all cases that allege excessive use of force by Oakland police").

The only related case decision Facebook points to involved groups who filed the same federal antitrust claims against the same defendant challenging the same anti-competitive practice. *See* Def.'s Admin. Motion at 1-2, *In re Apple Iphone Antitrust Litig.*, No. 11-cv-06714 (N.D. Cal.), ECF No. 150.

In contrast, here the cases share *no common legal claims* and the focus of those claims is totally different. In *Vargas*, federal and New York fair housing laws ban practices specific to housing: housing ads that indicate bias, misrepresenting housing availability, denial of multiple-listing services, and making housing unavailable (Counts I-V). In *Opiotennione*, California and D.C. public accommodation laws broadly bar unequal treatment in all business services, and D.C. consumer law bars deceptive practices (Counts I-IV). The central questions in both cases are different. In *Opiotennione*, the key question on liability is whether Facebook's facially discriminatory treatment of women and older users in its business—denying them financial services information—is *reasonable*. *Opiotennione*, ECF No. 39 at 25. That question is not relevant to any claims in *Vargas*. In *Vargas* the central claim, FHA § 3604(c), which bars publishing biased housing ads, does "not require evidence of discriminatory intent"; there is a violation when an ad suggests a "preference, limitation or discrimination to the 'ordinary listener' or reader." *Hous. Rights Ctr. v. Sterling*, 404 F. Supp. 2d 1179, 1193 (C.D. Cal. 2004). In its motion to dismiss in *Vargas*, Facebook admits that the ordinary listener standard applies to § 3604(c) claims and spends most of its liability section arguing that very standard is not satisfied. *Vargas*, ECF No. 42 at 12-18. The other claims in *Vargas* simply have nothing to do with the facts or claims in *Opiotennione*.[1]

---

[1] On the § 3604(d) claim, Facebooks solely argues it did not make misrepresentations. *Id.* at 21-22. On the § 3606 claim, its only argument is it does not apply because Facebook is not a multiple-listing service. *Id.* at 22. Its main arguments on the § 3604(a) claim are that advertising cannot make housing unavailable and Facebook does not sell housing. *Id.* at 18-21. While the § 3604(a) claim requires a showing of intentional bias, like some of the claims in *Opiotennione*, here it is beyond dispute that Facebook engaged in intentional discrimination since it deployed facially discriminatory policies that expressly rely on protected statuses. *Opiotennione*, ECF No. 39 at 23-24. The § 3604(a) claim is also styled as a disparate impact claim, which is not found in *Opiotennine*. *Id.* Also,

OPPOSITION TO RELATED CASE MOTION      4      CASE NO. 3:19-CV-05081-WHO

Moreover, Facebook's § 230(c) defense may be analyzed differently in both cases. *Opiotennione* challenges bias that stems from Facebook requiring all users to identify their age or gender and requiring advertisers to select the age or gender of users to receive their ads, ECF No. 39 at 11-17, while *Vargas* challenges actions against protected statuses that users are not required to identify, like disability or race.

### C. Unduly Burdensome Duplication or Conflicting Results Are Not Possible

As there is no overlap in the class definitions, claims, or remedies, the litigation will focus on totally different issues. It is hard to imagine how there could be duplication of labor or expense. Since a ruling for or against one class cannot bind a different class with different legal claims, conflicting results are not possible, or at best are "remote." *Ortiz*, 2013 WL 12175002, at *2. If efficiency can be achieved through coordination, plaintiffs' counsel in both cases are willing to pursue such efficiency together.

### III. Reassignment of *Opiotennione* Will Cause Prejudice and Waste Judicial Resources

Granting this motion will prejudice Opiotennione and waste judicial resources, not save them. The motion to dismiss hearing and CMC in *Opiotennione* are scheduled for August 6—*two weeks from now*. They would have occurred on July 16 had Facebook not sought two extensions for its reply. And the parties and amici have already filed *101 pages of briefing*, with Facebook set to file a 22-page reply in two days. In light of this, Judge Corley has likely invested substantial time analyzing the briefs, preparing for argument, or even drafting an opinion. Reassigning the case now will clearly waste judicial resources. Similarly, Opiotennione's counsel had begun preparing for the August 6 hearing and working with Facebook on a Rule 26(f) statement but have been sidetracked to respond to this motion.

Moreover, granting the motion will unduly delay resolving the motion to dismiss and discovery in *Opiotennione*. Due to the hefty briefing and this Court's other matters, the August 6 hearing will likely be delayed. And Facebook plans to ask to delay the hearing until October 7 when the *Vargas* dismissal motion is heard. This delay is prejudicial, especially since nearly nine months have passed in the case. Every week the case is delayed millions of people are denied their civil rights. Facebook has *already* delayed the case by several months and extracted concessions (*e.g.*, deferring discovery and the CMC) based on a promise to hold a dismissal hearing this summer--a promise its motion would vitiate.

---

it is of no moment that two civil rights cases assert intent-based claims, the most classic form of bias. Finally, the aiding and abetting clams will track the relevant liability standards of each case that, again, are starkly different.

Dated: July 22, 2020

Respectfully Submitted,

*/s/ Peter Romer-Friedman*
Peter Romer-Friedman*
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
Telephone: (202) 888-1741
Email: peter@guptawessler.com

Jahan C. Sagafi (State Bar No. 224887)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
Email: jsagafi@outtengolden.com

Jason R. Flanders (State Bar No. 238007)
AQUA TERRA AERIS LAW GROUP
490 43rd Street
Oakland CA 94609
Telephone: (916) 202-3018
Email: jrf@atalawgroup.com

Adam T. Klein*
Michael Litrownik*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
Email: atk@outtengolden.com
Email: mlitrownik@outtengolden.com

Matthew K. Handley*
Rachel Nadas*
HANDLEY FARAH & ANDERSON PLLC
777 6th Street, NW
Eleventh Floor
Washington, DC 20001
Telephone: (202) 559-2411
Email: mhandley@hfajustice.com
Email: rnadas@hfajustice.com

Pooja Shethji*
OUTTEN & GOLDEN LLP
601 Massachusetts Ave. NW
Suite 200W
Washington, DC 20001
Telephone: (202) 847-4400
Facsimile: (646) 952-9114
Email: pshethji@outtengolden.com

William Most (State Bar No. 279100)
LAW OFFICE OF WILLIAM MOST
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
Telephone: (504) 509-5023
Email: williammost@gmail.com

* *pro hac vice*

*Attorneys for Plaintiff and Proposed Class Members*
*in Opiotennione v. Facebook, Inc.*, No. 19-cv-07185 (N.D. Cal.).